DEBORAH G. LEVINE
CA State Bar No. 57607
Law Offices of Deborah G. Levine
1299 Newell Hill Place, Suite 300
Walnut Creek, CA  94596
Tel. (925) 933-5100
Fax  (925)933-5297

Attorney for THOMAS EDWARD GREEN

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA, | ) **Case No. CR 08 00075 JW** |
| Plaintiff, | ) |
| | ) MOTION TO MODIFY CONDITIONS |
| vs. | ) OF PRETRIAL RELEASE/ POINTS |
| | ) AND AUTHORITIES IN SUPPORT |
| | ) THEREOF |
| THOMAS EDWARD GREEN, | ) Date:      May 8, 2008 |
| | ) Time:      9:30 a.m. |
| Defendant. | ) Dept.:     Hon. Patricia Trumbull |
| | ) |

**TO:    UNITED STATES OF AMERICA, PLAINTIFF; JOSEPH RUSSONIELLO, UNITED STATES ATTORNEY, AND BENJAMIN KENNEDY, ASSISTANT UNITED STATES ATTORNEY**

## INTRODUCTION

The defendant, Thomas Edward Green, Jr., submits this brief in support of his request that the court vacate electronic monitoring as a condition of his pretrial release.  This condition should be vacated because Mr. Green poses no flight risk nor does he pose any danger to the community. Knowing from November of 2006 that he could be indicted and potentially convicted and sentenced for the present offenses, he remained at all times available to surrender to the court and cooperate with the judicial process.  At no time since this investigation commenced in 2006 has Mr. Green violated any law nor has he engaged in any inappropriate conduct either in the concrete

1  world or in cyberspace.  Since indicted, conditions of release have been imposed, and Mr. Green

2  has not once violated any of their terms and requirements.[1]

3        Thomas Green lives in San Jose.  He is the Director of Patient Financial Services for

4  Stanford University Medical Center, Lucile Packard Children's Hospital in Palo Alto.  His

5  services there are highly valued.[2]  He has earned a masters degree in business (MBA) from San

6  Jose State University.  In addition, Mr. Green is very dependent upon his ties to the area as a

7  patient at Kaiser Permanente where he sees his physician frequently and regularly and is

8  prescribed a complex combination of medications for a serious chronic illness.   Mr. Green has

9  never in his life been arrested before his arrest in this case.  Based upon these facts it is clear that

10  electronic monitoring is not necessary to insure the safety of the community nor to assure Mr.

11  Green's appearance.

12        Having established facts which support this request Mr. Green submits the following legal

13  arguments as to why his release from the electronic monitoring requirement is permitted:

14  1.  The mandatory conditions of the Adam Walsh Act (18 U.S.C. §3142(c)(1)(B)) do not

15      apply because: (a) the statute specifically excludes possessory violations

16      (18U.S.C.§2252(a)(4)) from the list of offenses requiring pretrial electronic monitoring;

17      and (b) the alleged transmission offense in this case (18 U.S.C. §2252(a)(1)) occurred

18      before the Adam Walsh Act became law.

19  2.  The mandatory conditions of Adam Walsh do not apply because the Act requires there be

20      a minor victim and in the present case there is none.  Knowing that 18 U.S.C.§2252(a)(4)

21      offenses where excluded from the Act, Congress, in clear language added the requirement

22      that, "[I]n any cases that *involves a minor victim* under..." [listing included offenses]the

23      mandatory conditions, including electronic monitoring apply.  (emphasis added)  Since

24      possession of child pornography is not included in the list, the minors pictured in the

25

26     [1]See April 24, 2008 memorandum from pre trial services

27     [2]See attached letters and work evaluations

28             2

possessed pornography are clearly not the victims the amendment is referring to.  Only in the listed offenses that "**involve a minor victim**" do the Walsh restrictions apply.  Under the allegations of 18 U.S.C.§ 2252(a)(1), the transmittal offense, the minor victim would have to be the recipient of the transmittal or in some other manner victimized.  Here there is no assertion by the government that the pictures were transmitted to a minor.

Accordingly, under the Act's clear language, the mandatory pre trial release conditions do not apply.

3.    If the Adam Walsh Act applies, it's failure to provide procedural safeguards render it an unconstitutional violation of the due process clause of the Fifth Amendment, the excessive bail clause of the Eighth Amendment and the separation of powers doctrine.

As such, the court should exercise its discretion to terminate electronic monitoring as a condition of defendant's release.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

According to FBI reports prepared during the investigation of this case, Thomas Edward Green was contacted by the FBI on November 16, 2006 at his home in San Jose, California.  FBI Special Agent Wade Luders told Mr. Green on that date that he was "investigating inappropriate pictures of children being emailed from an AOL account registered to [him]".  Agent Luders showed a picture to Mr. Green characterized as child pornography, which Agent Luders claimed was emailed from an account registered to Mr. Green.

After speaking with Mr. Green, Agent Luders took a computer and USB hard drive memory stick from Mr. Green's home.  On November 17, 2008, Agent Luders examined the memory stick and found in that memory stick what he described as minors engaged in sexual acts.

As the result of the investigation, Mr. Green retained one counsel in November 2006 and shortly thereafter retained a second attorney, who continues to represent him.  Mr. Green knew at all times since November 2006 that the FBI investigation could result in a criminal indictment. The government at all times since November 2006, knew that Mr. Green was represented and had

1  offered, through counsel, to self surrender whenever notified.  At no time does the government

2  allege that Thomas Green violated the law by either viewing or emailing child pornography after

3  his November 16, 2006 contact by the FBI.

4       Mr. Green is charged in a two count indictment as follows:

5       Count One alleges that on or about June 18, 2006, Mr. Green transported and shipped in

6  interstate commerce, by means of a computer, material involving the sexual exploitation of

7  minors, in violation of 18 U.S.C.§2252(a)(1);

8       Count Two alleges that  on or about November 17, 2006, Mr. Green possessed images of

9  one or more minors engaging in sexually explicit conduct, in violation of 18

10  U.S.C.§2252(a)(4)(B).

11       On February 21, 2008, the defendant was arraigned, entered a plea of not guilty and was

12  released from custody on numerous conditions which include electronic monitoring.

13                              **ARGUMENT**

14       On July 27, 2006, Congress enacted the Adam Walsh Child Protection and Safety Act of

15  2006 ("the Act"), which amended, inter alia, 18 U.S.C. §3142(c)(1)(B) to read as follows:  (c)

16  Release on conditions.-(1) If the judicial officer determines that the release described in Section

17  (b) of this section will not reasonably assure the appearance of the person as required or will

18  endanger the safety of any other person or the community, such judicial officer shall order the

19  pretrial release of the person…

20       (B) subject to the least restrictive further conditions, or a combination of conditions, that

21  such judicial officer determines will reasonably assure the appearance of the person as required

22  and the safety of any other person and the community, which may include the condition that the

23  person– [be subjected to any condition or combination of conditions listed in 3142(c)(1)(B)(i)

24  through (xiv)].  In any case that involves a minor victim under Section 1201, 1591, 2241, 2242,

25  2244(a)(1), 2245, 2251, 2251A, 2252(a)(1), 2252(a)(2), 2252(a)(3), 2252A(a)(1), 2252A(a)(2),

26  2252A(a)(3), 2252A(a)(4), 2260, 2421 2422, 2423, or 2425 of this title, or a failure to register

27

28                              4

1  offense under section 2250 of this title, any release order shall contain, at a minimum, a condition

2  of electronic monitoring and each of the conditions specified at paragraphs (iv), (v), (vi), (vii), and

3  (viii).

4  18 U.S.C.§3142(c)(1)(B)(2006)(as amended).

5       Based upon this language, the magistrate imposed the electronic monitoring requirement

6  as a condition of defendant's pretrial release.

7  **A.    THE MANDATORY PROVISIONS OF THE ADAM WALSH ACT BY THEIR
   TERMS DO NOT APPLY TO POSSESSORY OFFENCES IN VIOLATION OF 18 U.S.C.**

8  **2252(a)(4), AS ALLEGED IN COUNT TWO OF THE INDICTMENT.**

9       The exhaustive list of offenses that trigger mandatory electronic monitoring specifically

10 excludes possession of child pornography in violation of 18 U.S.C. §2252(a)(4).  This exclusion

11 makes perfect sense: simple possession is the least serious offense of this type and as such has the

12 least severe sentence.

13      Because Congress specifically excluded those accused of violating Section 2252(a)(4)

14 from the list of offenses for which it mandates electronic monitoring, the mandatory provisions of

15 the Act do not apply to the offense alleged in Count Two of the Indictment.

16 **B.    THE ADAM WALSH ACT DOES NOT APPLY TO COUNT ONE OF THE
   INDICTMENT BECAUSE THE ALLEGED CONDUCT OCCURRED BEFORE THE**

17 **ACT TOOK EFFECT**

18      The conduct referred to in Count One is alleged to have occurred "on or about June 18,

19 2006" -- over a month before passage of the Adam Walsh Act.  Because the Act does not

20 specifically require retroactive application, the judicial presumption against retroactivity precludes

21 its application to Count One.

22      The judicial presumption against retroactive legislation is "deeply rooted in our

23 jurisprudence." *Landgraf v. USI Film Products* (1993) 511 U.S. 244, 265.  As the Supreme Court

24 has stated time and again, "[e]lementary considerations of fairness dictate that individuals should

25 have an opportunity to know what the law is and to conform their conduct accordingly; settled

26 expectations should not be lightly disrupted."  Id.

27

28                         5

1    It is the judicial system, rather than the legislative process, that is best equipped to identify

2  past wrongdoers and to fashion remedies that will create the conditions that presumably would have

3  existed had no wrong been committed.

4  Id. at 267.

5    This rule requires clearly stated legislative intent before a statute can be applied to conduct

6  that occurred before its passage.  "Since the early days of this Court, we have declined to give

7  retroactive effect to statutes burdening private rights unless Congress has made clear its intent."  Id.

8  at 270.  "Requiring clear intent assures that Congress itself has affirmatively considered the potential

9  unfairness of retroactive application and determined that it is an acceptable price to pay for the

10 countervailing benefits." Id. at 272-273.  Thus, courts will not apply statutes retrospectively "unless

11 compelled to do so by language so clear and positive as to leave no room to doubt that such was the

12 intention of the legislature."  Id. at 271 (emphasis supplied) (see also *Miller v. United States* (1933)

13 294 U.S. 435, 439 ("the law is well settled that generally a statute cannot be construed to operate

14 retrospectively unless the legislation to that effect is unequivocally clear.").

15    The array of statutory schemes to which the presumption is applied is quite broad.  It includes

16 any provision that "takes away or impairs vested rights acquired under existing law, or creates a new

17 obligation, imposes a new duty, or attaches a new disability in respect to transactions or

18 considerations already past."  *Marrie v. SEC*, 374 F.3d 1196, 1207 (D.C. Cir. 2004).   Under this

19 scheme, it has been applied to strike down retroactivity of statutes and regulations restricting

20 immigration (*Chew Heong v. United States* (1884) 112 U.S. 536), imposing new monetary obligations

21 on the government (*United States v. Magnolia Petroleum Co.* (1928) 276 U.S. 160), clarifying the

22 definition of "improper professional conduct" prerequisite to the imposition of SEC sanctions

23 (*Marrie*, *supra*, 374 F.3d at 1207) and setting caps on Medicare reimbursable wage costs (*Bowen v.

24 Georgetown University Hospital* (1988) 488 U.S. 204, 207).

25    The only two recognized types of legislation to which the presumption against retroactivity

26 may not apply are changes to rules of procedure that do not affect primary rights, and statutes that

27

28                                                    6

1  confer new rights or relief.  See, e.g., Ex Parte *Collett* (1949) 337 U.S. 55, 71 (governing the transfer

2  of civil actions); *Thorpe v. Housing Authority of Durham* (1969) 393 U.S. 268 (requiring notice to

3  FHA tenants before eviction).

4       The mandatory release conditions of the Adam Walsh Act falls within neither of these

5  categories.  Because it imposes significant new duties and obligations, it must be presumed to be

6  prospective absent unequivocally clear legislative intent to the contrary.

7       The Act contains no such statement of legislative intent.  To the contrary, it is entirely silent

8  on the issue of retroactivity.  Nor do the applicable provisions of Public Law 109-248 -- which

9  codified the changes to Section 3142 -- contain any such language (see Public Law 109-248, Section

10  216).  In contrast, the legislation does contain "effective date" language in other provisions (see

11  sections 129(b) and 152(c)).  This demonstrates that Congress intended the Act's mandatory release

12  conditions to be applied prospectively only.

13       The presumption against retroactivity is in accord with the canon of statutory construction that

14  favors interpretations which avoid the adjudication of constitutional questions.  *Landgraf*, *supra*, 511

15  U.S. at 268.  Retroactivity can implicate the constitutional protections against ex post facto laws, bills

16  of attainder and laws impairing the obligations of contracts.  Id. at 267.  Retroactive application of

17  The Act's mandatory electronic monitoring provision, by imposing significant new burdens upon

18  pretrial release, does in fact implicate the prohibition against ex post facto laws. See, e.g., *Plyer v.*

19  *Moore*, 129 F.3d 728 (4th Cir. 1997) (holding that a new state law excluding certain offenders from

20  consideration for supervised release violates ex post facto); *Sheppard v. La. Board of Parole*, 873

21  F.2d 761, 764 (5th Cir. 1989) (adding new supervision costs to supervised release violates ex post

22  facto).

23       In sum, because the mandatory release conditions of the Adam Walsh Act fail to include an

24  express retroactivity provision, their burdens must be construed as prospective only.  Because the

25  conduct alleged in Count One occurred before passage of the Act, the mandatory conditions of pretrial

26  release do not apply.

27

28                                                    7

**C.    THE ADAM WALSH ACT DOES NOT APPLY TO THE TRANSMISSION CHARGE BECAUSE THE OFFENSE DID NOT "INVOLVE A MINOR" WITHIN THE MEANING OF THE ACT**

The amendment to the Bail Reform Act imposed by Adam Walsh clearly states that only "[i]n any case that involves a minor"... certain mandatory conditions of pre trial release shall be imposed in the specific list of offenses.  Because 18 U.S.C.§2252(a)(4) is not in the list (the possession charge), and because that section penalizes the possession of child pornography, clearly possession alone is not considered a crime that "involves a minor".  Congress wrote the language very clearly. It could have omitted the exclusionary language "involves a minor" before the list of offenses but it did not.  If Congress intended simply to impose the more restrictive conditions on all persons charged with any of the listed offenses, it would not have limited the list to include only those offenses that involve a minor.

As one court has recently stated regarding these same amendments:

> As a general matter, the meaning of a statute is found in the actual language used therein. This is precisely how a legislature gives expression to its wishes. When the language of a given statute is plain, "the sole function of the courts is to enforce it according to its terms." *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (citation and internal quotations omitted). To this end, "courts must presume that a legislature says in a statute what it means and means in a statute what it says." *Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 253-54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992).

*United States v. Kahn* 524 F.Supp.2d 1278 at 1282 (2007, W.D.Wash.).

In *Kahn*, the defendant was charged with a single count of soliciting a minor to engage in illicit conduct.  However, rather than a minor being involved, an adult decoy was used by law enforcement in an undercover operation.  The adult undercover police officer said she would provide a child for the defendant to have sex with.  But because the child was fictitious, the court found that the crime did not "involve a minor victim" as required by explicit language of the Adam Walsh amendments to the Bail Reform Act.

When language is clear, as it is in the Adam Walsh amendments, to the Bail Act there is no need to look to the legislative history.  In *Kahn* the court found the same language in question here

("in cases involving a minor victim") to be unambiguous.  Accordingly, the court held that the legislature created a clear condition precedent (that the case involve a minor victim) to the application of the mandatory release requirements.

**D.    THE MANDATORY CONDITIONS OF THE ACT VIOLATE THE PROTECTIONS OF PROCEDURAL DUE PROCESS, THE PROHIBITION AGAINST EXCESSIVE BAIL AND THE SEPARATION OF POWERS DOCTRINE OF THE UNITED STATES CONSTITUTION**

If the court determines that the mandatory release conditions of the Act do in fact apply in this case, it must then determine whether those provisions violate any constitutional principle. As one court already has ruled, because the provisions apply to broad categories of defendants without any individualized inquiry, they violate the Fifth Amendment's right to procedural due process, the Eight Amendment's excessive bail clause and the separation of powers doctrine.

**1.  Excessive Bail**

The Eight Amendment to the Constitution commands that, in criminal matters, "excessive bail not be required."  U.S. Const., Amendment VIII.  In the federal system, criminal defendants continue to enjoy the presumption of innocence in setting conditions of release.  See 18 U.S.C.§3142 (j) ("Nothing in this section shall be construed as modifying or limiting the presumption of innocence.")  Thus, historically, the right to be released before trial was conditioned only upon "the accused's giving adequate assurance that he will stand trial and submit to sentence if found guilty."  *Stack v. Boyle* (1951) 342 U.S. 1.

Since the Court decided *Stack* in 1951, it has recognized that the function of bail, though limited, also includes ensuring the safety of the alleged victim and the community.  *United States v. Montalvo-Murillo* (1990) 495 U.S. 711, 714.  However, when conditions are imposed

upon release for this purpose, they must not be "excessive in light of the perceived evil." *United States v. Salerno* (1987) 481 U.S. 739.

In *Salerno*, the Supreme Court upheld a facial challenge to the Bail Reform Act's provision allowing detention to ensure public safety, but only because the Act contained "numerous procedural safeguards [that] must attend an adversary hearing." *Salerno*, *supra*, 481 U.S. at 754. Such protections are manifestly absent from the Adam Walsh amendments.

In *United States v. Crowell*, Slip Copy 2006 WL 3541736 (W.D.N.Y), the court held that the mandatory release provisions of the Act violate the Eighth Amendment. Under the *Salerno* formulation, the court weighed the additional conditions of release (home detention, electronic monitoring, curfew restrictions and no contact orders) against the interests the Government seeks to protect, "including protecting children from potential sexual abuse and exploitation through the creation of pornographic images for distribution." Id. at p. 15. The court found the Government's interest insufficient to justify the blanket imposition of such conditions on all defendants charged with any of the listed crimes. The imposition of such conditions on all defendants charged with certain crimes, regardless of the personal characteristics of each defendant and circumstances of the offense, without any consideration of factors demonstrating that those same legitimate objectives cannot be achieved with less onerous release conditions, will subject a defendant, for whom such conditions are, in the court's judgment, unnecessary, to excessive bail in violation of the Eight Amendment. *Crowell*, *supra*, at pp. 15-16. The court specifically relied upon the *Salerno* Court's reasoning, and the glaring discrepancy between the individualized determination required for detention and the sweeping mandatory conditions of release for all defendants charged with any of the listed

10

offenses.

While the Bail Reform Act directs that on the Government's motion, the court must consider pretrial detention for particular offenses and defendants, despite the fact that as to certain offenses there is a presumption that detention be imposed, the Act ultimately leaves the question to judicial determination. Moreover, in *Salerno* the Supreme Court's upholding of the authorization of pretrial detention by the Bail Reform Act turned expressly on the fact that the statute does not require detention be imposed in every case based solely on the defined predicate offenses. *Crowell, supra*, at p. 14. In *Crowell*, the court did in fact hold such a hearing, after which it determined that the conditions of release necessary to ensure the defendant's presence and protect the public were less stringent than those required by the Adam Walsh Act. Id. at pp. 16-17. Based upon the facts presented at the review hearing in Mr. Green's case, lesser restrictions will clearly be found adequate.

A finding that blanket application of the Act's mandatory release provisions is "excessive in light of the perceived evil" finds further support in the complete absence of any congressional findings or debate prior to passage. The mandatory release provisions were part of an amendment proposed by Senator Hatch only seven days before the bill's final passage. 152 Cong. Rec. S8012-02 (daily ed. July 20, 2006). Unlike other provisions of the Act, such as the enhanced sex offender registry, the release conditions were passed without any substantive debate or supporting congressional reports. See, e.g., H.R. Rep. No. 109-218(1), at 23-24 (2005). This makes clear that Congress did not even attempt to determine whether the conditions were necessary to ensure public safety.

Magistrate Chen's decision in *United States v. Gardner*, 523 F.Supp.2d 1025 (N.D.Cal.

2007) , by its terms does not control here.  In *Gardner*, the defendant objected to the singular addition of electronic monitoring to existing conditions that already included a curfew.  Ms. Gardner was not restricted to her home before the monitoring nor was she after the electronic monitoring.   The Court found that the manner in which the electronic monitoring was to be imposed did not restrict Ms. Gardner any further than the original curfew condition.  It merely changed the manner in which the curfew was monitored.   On this basis, the court explicitly distinguished the facts before it from the situation in *Crowell*.

Ms. Gardner was already under curfew at the direction of Pretrial Services.  Consistent with this Court's policies and practices, that curfew was enforced by monitoring established by voice identification which required her to answer her home phone during the hours of her curfew.  Under the conditions of release before electronic monitoring, its addition merely changed the manner in which her curfew was enforced.  The monitoring, while slightly more intrusive, did not change the substantive restrictions on Gardner's liberty.  *Gardner*, *supra*, 543 F.Supp.2d at 1030.  In this particular situation, the court was unable to conclude "that the singular addition of electronic monitoring . . . is 'excessive' in light of the government's valid interest in obtaining an additional safeguard against the risk of post-arrest criminal activity." Ibid.

In this case, the electronic monitoring that the court has imposed, pursuant to the Adam Walsh Act, amounts to virtually complete home confinement.  The court also imposed the additional conditions required by the Act (no contact with minors, firearms prohibitions, and travel restrictions).  It is thus a much more invasive restriction on liberty than the "singular addition" of electronic monitoring to enforce an existing curfew that the court addressed in

*Gardner*.

The court therefore should adopt the reasoning of *Crowell*, and find that the mandatory release conditions of the Adam Walsh Act, taken together, constitute excessive bail in violation of the Eighth Amendment.

## 2. Procedural Due Process

The Due Process Clause of the Fifth Amendment provides that the government shall not deprive a person of "life, liberty, or property without due process of law."  U.S. Const., Amendment V.  The term "liberty" in the due process clause "extends beyond freedom from physical restraint. . . . the interest denominated as 'liberty' [must not only] be fundamental but also . . . an interest traditionally protected by our society."  *Michael H. v. Gerald D.* (1989) 491 U.S. 110, 121-122.

The question of release or detention under the Bail Reform Act clearly implicates a fundamental liberty interest.  *Salerno*, *supra*, 481 U.S. 739.  So, too, do Congressionally mandated release conditions which significantly restrict the freedom of the person accused, but not convicted, of a crime.  United *States v. Scott*, 450 F.3d 863 (9th Cir. 2006) (requiring waiver of fourth amendment rights as a condition of pretrial release invalid).  Moreover, the "adverse social consequences" of government action, such as the stigma attached to certain conditions, must be considered as well.  See, e.g., *Doe v. Gallinot*, 657 F.2d 1017, 1021 (9th Cir. 1982).

The court in *Crowell* assumed without discussion that the Adam Walsh mandatory release conditions -- taken together -- constitute a protected liberty interest.  The court in *Gardner* did not reach this issue: "[E]ven assuming arguendo that certain conditions of release would impair liberty interests cognizable under the Fifth Amendment, here what is at issue is

13

the singular addition of electronic monitoring to enforce an already imposed curfew." *Gardner*, *supra*, 523 F.Supp.2d at 1032.

The mandatory release conditions, in their entirety, significantly restrict an accused's freedom. They keep him confined to his home, except when he is working or conducting his necessary affairs; prohibit him from contacting entire classes of persons or from possessing a firearm (a right also guaranteed by the Constitution); and require him to wear a monitor that tracks his every movement. There is considerable social stigma attached to such restrictions. There can be no question that, as the *Crowell* court concluded without discussion, this burdensome combination of restrictions on freedoms we all take for granted implicates a traditionally recognized liberty interest.

The right to procedural due process is deeply rooted in our system of justice. *Salerno*, *supra*, 481 U.S. at 746 (citing *Mathews v. Eldridge* (1976) 424 U.S. 319, 335). "[C]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by the government action." *Goldberg v. Kelly* (1970) 397 U.S. 254, 263. In addition, the court should consider the probable value of additional procedures and the fiscal and administrative costs of such procedures.

[T]he identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation through the procedures used, and the probable value, if any, of additional or substitute procedures; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or

substitute procedural requirement would entail.  *Mathews*, *supra*, 424 U.S. at 335.  The private

interest here is a significant liberty interest -- the right of those merely accused of criminal acts

to be free from significant and stigmatizing restraints on their personal freedom.  This right is

guaranteed by the Excessive Bail Clause of the Eighth Amendment, and given comprehensive

substantive and procedural protection by the Bail Reform Act.  Indeed, the mandatory release

conditions of the Adam Walsh Act are the only statutory restrictions on pretrial liberty that may

be imposed with absolutely no procedural safeguards whatsoever.

The risk of erroneous deprivation absent an adversary hearing is substantial.  In *Crowell*,

for example, the court had held such a hearing and found the Adam Walsh conditions

unnecessary.  *Crowell*, *supra*, at pp. 16-17.  Congress has determined that possession of child

pornography alone does not pose a significant enough risk to the community to require

electronic monitoring, yet its' decision to impose it upon those accused of sending a computer

image to another person was made with absolutely no debate, study or reporting.

Moreover, electronic monitoring, although intrusive when combined with severe

restrictions on movement, is ultimately a fairly ineffectual tool.  If someone is inclined to

commit sexual acts upon minors or solicit minors for child pornography, it seems doubtful that

an ankle monitor would do much to prevent it.  It is no different than monitoring an individual

accused only of possessing a firearm in order to prevent him from shooting someone.

Finally, the fiscal and administrative costs associated with a hearing are minimal.

Indeed, in all cases other than those covered by the Adam Walsh Act, such a hearing is required

(until 2006, a hearing was required in all cases).  The hearing is relatively brief, and usually

occurs in conjunction with arraignment and any motion by the government for detention.  In

most cases, especially those falling on the less serious end of the spectrum, Pretrial Services

likely would not recommend electronic monitoring and the court would simply follow this

recommendation.

The court in *Crowell* found the government's interest insufficient to override "the

fundamental requisite of due process of law . . . the opportunity to be heard." *Crowell*, *supra*, at

p. 18.  The court noted that the Supreme Court in *Salerno* upheld the Bail Reform Act because

it mandated "numerous procedural safeguards [that] must attend an adversary hearing."

*Salerno*, *supra*, 481 U.S. at 754.  Citing the Bail Reform Act's judgment to deemphasize the use

of money bonds and provide "flexibility in setting conditions of release appropriate to the

characteristics of individual defendants," the court found that the Act's mandatory release

conditions failed to accord an appropriate individualized evaluation.  *Crowell*, *supra*, at p. 19

(quoting S. Rep. No. 98-225, 98th Cong., 1st Sess. 26 (1983)).

The Adam Walsh Amendments, by mandating certain pretrial release conditions,

effectively create an irrebuttable presumption that the appearance at trial of arrestees charged

with certain crimes, and the safety of the community, cannot be reasonably assured without such

conditions. "The assumption that [a defendant is] more likely to commit crimes than other

members of the public, without an individualized determination to that effect, is contradicted by

the presumption of innocence.  That an individual is charged with a crime cannot, as a

constitutional matter, give rise to any inference that he is more likely than any other citizen to

commit a crime if he is released from custody." *Crowell*, *supra*, at pp. 21-22 (quoting *United

States v. Scott*, 450 F.3d 863, 874 (9th Cir. 2006).

In *Scott*, the Ninth Circuit invalidated under the Fourth Amendment a pretrial release

16

condition requiring a defendant to consent to search with less than probable cause.  This

holding, however, was based upon the lack of due process afforded the defendant prior to this

condition being imposed:

> [I]f a defendant is to be released subject to bail conditions that will help protect the community from the risk of crimes he might commit while on bail, the conditions must be justified by a showing that defendant poses a heightened risk of misbehaving while on bail.  The government cannot, as it is trying to do in this case, short-circuit the process by claiming that the arrest itself is sufficient to establish that the conditions are required.

*Scott*, *supra*, 450 F.3d at 874.

The reasoning of *Scott* controls this case.  The court therefore should follow the Crowell

decision, and find that the Adam Walsh Act's mandatory release conditions, taken together,

violate due process.

**3. Separation of Powers**

The Constitution expressly divides the functions of power among the three branches of

government.  As Justice Brandeis observed, "the doctrine of the separation of powers was

adopted [not] to promote efficiency but to preclude the exercise of arbitrary power." *Myers v.*

*United States* (1926) 272 U.S. 52, 293.  Maintaining functional separation among the three

branches is "essential to the preservation of liberty."  *Mistretta v. United States* (1989) 488 U.S.

361, 380.

This principle dates back at least as far as Madison's Federalist Papers, the foundation of

much of the structural content of the Constitution.  As Madison wrote, "The accumulation of

powers legislative, executive and judiciary in the same hand, whether of one, a few or many . . .

may justly be pronounced the very definition of tyranny."  James Madison, *The Federalist No.*

*47*, at p. 324.

17

Thus, Congress may not enact legislation that "impermissibly threatens the institutional integrity of the Judicial Branch." *Commodity Futures Trading Comm'n v. Schor* (1986) 478 U.S. 833, 851. Legislation that interferes with the courts' independent exercise of their judicial powers, including the consideration of relevant evidence, violates the separation of powers doctrine. *United States v. Klein* (1871) 80 U.S. 128, 146-147.

The Adam Walsh Act amendments interfere with one of the primary judicial functions: the setting of bail in criminal matters. "Since the Constitution was adopted, the setting of bail in federal criminal cases, with minor exceptions, has been recognized as representing the quintessential exercise of judicial power." *Crowell*, *supra*, at p. 24 (citing *Stack v. Boyle* (1951) 342 U.S. 1, 4-5. Under the Excessive Bail Clause of the Eighth Amendment, monetary bail cannot be set at a figure higher than necessary to reasonably assure a specific individual's return to court. "The fixing of bail for any individualized defendant must be based upon standards relevant to the purpose of assuring the presence of that defendant." *Stack*, *supra*, 342 U.S. at 4 (emphasis supplied). Setting the conditions of release are part and parcel of this function. Thus, the court should follow *Crowell* in holding that the mandatory release provisions of the Act violate the separation of powers doctrine.

Congress has unambiguously imposed upon the federal judiciary a specific rule to be applied in determining the release of a defendant charged with specified offenses, thereby denying to the court the exercise of its judicial authority to set such conditions. In so doing, Congress has commandeered the court into acting as its agent for purposes of imposing the targeted release conditions. . . . As such, the Adam Walsh Amendments unmistakedly (sic) and unduly encroach upon the judicial function, exclusively reserved by Article III of the

18

Constitution to the Judicial Branch, in violation of the separation of powers established by the Constitution's framework. *Crowell*, *supra*, at p. 24-25.

## CONCLUSION

This court should exercise its discretion to remove the electronic monitoring condition on Thomas Green since it is clearly unnecessary to insure his appearance in this case. Since November 16, 2006 when Mr. Green was first contacted by the FBI he has lived a law abiding life and has posed no threat to anyone in the community. Believing since November 2006 that Mr. Green had committed the charged offenses, the Government chose not to seek an indictment until February of 2008. Surely had the Government thought Mr. Green posed a threat to the community such a delay would not have occurred.

Finally, the amendments to the Bail Reform Act imposed by Adam Walsh do not apply to this case for the stated reasons. If this court, however, found that the amendments do apply, it should find the amendments unconstitutional in this case.

Date: _____                              Respectfully submitted,


                                                     s/Deborah G. Levine_____

                                                     DEBORAH G. LEVINE
                                                     Attorney for Defendant
                                                     THOMAS EDWARD GREEN, JR

19