1   JOSEPH P. RUSSONIELLO (CABN 44332)
    United States Attorney

2

3   BRIAN J. STRETCH (CABN 163973)
    Chief, Criminal Division

4   DANIEL R. KALEBA (CABN 223789)
    Assistant United States Attorney

5
        150 Almaden Boulevard, Suite 900
6       San Jose, California 95113
        Telephone: (408) 535-5061
7       Facsimile: (408) 535-5066
        E-Mail: daniel.kaleba@usdoj.gov

8
    Attorneys for the United States of America

9

10                  UNITED STATES DISTRICT COURT

11               NORTHERN DISTRICT OF CALIFORNIA

12                        SAN JOSE DIVISION

13

14  UNITED STATES OF AMERICA,        )   No. CR 08-00075 JW
                                     )
15          Plaintiff,               )
                                     )   UNITED STATES' RESPONSE TO
16      v.                           )   DEFENDANT'S MOTION TO MODIFY
                                     )   CONDITIONS OF PRETRIAL RELEASE
17  THOMAS EDWARD GREEN,             )
                                     )   Hearing Date: June 16, 2008
18          Defendant.               )   Time:        1:30 p.m.
                                     )   Court:       Hon. James Ware
19  _____)

20  I.      INTRODUCTION

21          Defendant Thomas Edward Green, in his motion and brief in support, challenges the

22  constitutionality of an amendment to the Bail Reform Act (18 U.S.C. § 3142) wrought by the

23  Adam Walsh Child Protection and Safety Act of 2006 ("Adam Walsh Act"). The amendment in

24  question modified 18 U.S.C. § 3142(c)(1)(B) by making electronic monitoring a mandatory

25  condition of release for anyone charged with one or more specified crimes of child exploitation.

26  This mandatory condition serves a valid government interest to protect children "from sexual

27  attacks and other violent crimes." *United States v. Gardner*, 523 F. Supp. 2d 1025, 1029 (N.D.

28

*United States' Response to Def's Mot.*
*to Modify Pretrial Release*
CR 08-00075 JW                          1

1  Cal. 2007); Pub. L. No. 109-248, tit. II, 109 Stat. at 611.

2         This Court should deny defendant's motion because the electronic monitoring provision

3  clearly applies to transmission violations under 18 U.S.C. § 2252(a)(1), and no *ex post facto* or

4  other presumption against retroactive legislation is implicated in the present case.  Further, as

5  Magistrate Judge Chen found in response to virtually identical constitutional arguments raised in

6  the *Gardner* opinion, Congress's modifications to the Bail Reform Act satisfy a valid and

7  legitimate government interest in an area of the law where Congress has had a long and

8  substantial hand in shaping the bail process, impose only an incremental change to the conditions

9  of pretrial release, and implicate no protected liberty interest.  The electronic monitoring

10 condition is clearly constitutional.

11 **II.    FACTUAL BACKGROUND**

12        From at least January 9, 2006, through on or about November 9, 2006, defendant, using

13 his AOL screen names "CUM4MYGIRL" and "PSSYTAGGINBRO" sent and received images

14 of child pornography over the internet.  Defendant himself knowingly transmitted 67 electronic

15 messages containing images of child pornography to other individuals, and possessed dozens of

16 child pornography images on his computer and electronic storage devices.  The images include

17 prepubescent minors and sadistic and masochistic conduct, such as an adult male penis in contact

18 with the genitalia of an approximately 10 year-old girl, and an adult male penis in the vicinity of

19 the genitalia of an approximately 4 year-old girl whose torso is partially covered in male

20 ejaculator.

21        On February 13, 2008, a federal grand jury in the Northern District of California returned

22 a two count indictment against defendant alleging felony violations of Transmission of Material

23 Involving the Sexual Exploitation of Minors in violation of Title 18, U.S.C. § 2252(a)(1), and

24 Possession of Material Involving Sexual Exploitation of Minors in violation of Title 18, U.S.C. §

25 2252(a)(4)(B).  On February 21, 2008, Magistrate Judge Trumbull issued a release order of the

26 defendant, imposing certain release conditions, including: a limitation on his travel to within the

27 Northern District of California; a prohibition against possession of firearms; submission to

28

*United States' Response to Def's Mot.*
*to Modify Pretrial Release*
CR 08-00075 JW                                    2

1   warrantless searches at the direction of Pretrial Services; participation in mental health

2   counseling; prohibition against contact with minors or use of a computer; and imposition of

3   electronic monitoring with limited permission to leave home for certain purposes, including

4   work, counseling, medical and legal reasons.  The pretrial release order was modified on May

5   11, 2008, to allow the defendant to leave home for certain activities on Thursday evenings and

6   Saturdays and Sundays during hours specified by the Court.

7   **III.    ARGUMENT**

8           The only condition of supervised release raised by defendant is the application of

9   electronic monitoring.  Defendant posits a number of objections.  First, he claims that the

10  statutory requirement of electronic monitoring does not apply because a minor victim was not

11  the recipient of defendant's distribution of child pornography.  (Mot. at. 3).  Second, defendant

12  argues that the amendment, as applied in this case, violates a judicial presumption against

13  retroactive legislation.  (Mot. at 5-7).  Lastly, defendant raises a facial challenge to the

14  constitutionality of the electronic monitoring provision on three grounds: excessive bail,

15  procedural due process, and separation of powers.  (Mot. at 9-19).

16          As set forth below, the condition clearly applies because defendant is charged with one of

17  the enumerated offenses requiring electronic monitoring.  The constitutional questions at issue

18  are whether or not Congress may mandate a certain condition upon pretrial release for a person

19  charged with a particular crime, and if so, may such condition be applied in suits arising before

20  their enactment without raising concerns about retroactivity.  Magistrate Judge Chen recently

21  concluded in *Gardner* that Congress could impose electronic monitoring as a condition of

22  release without violating the Constitution, and the United States recommends this Court apply

23  Judge Chen's thoughtful analysis to the present case.

24          **A.      The Pretrial Release Condition of Electronic Monitoring Applies to the
            Defendant's Distribution of Child Pornography.**

25          Amended as part of the Adam Walsh Child Protection and Safety Act of 2006, Title 18

26

27  U.S.C. § 3142(c) requires the imposition of certain conditions in "any case that involves a minor

    victim under section . . . 2252(a)(1)."  Those conditions include "a condition of electronic

28
    *United States' Response to Def's Mot.*
    *to Modify Pretrial Release*
    CR 08-00075 JW                          3

1   monitoring" and the following additional conditions: (1) abiding by specified restrictions on

2   personal associations, place of abode, or travel; (2) avoiding contact with the victim of the crime

3   or potential witnesses who may testify; (3) reporting on a regular basis to Pretrial Services; (4)

4   complying with a specified curfew; and (5) refraining from possessing a firearm, destructive

5   device, or other dangerous weapon.  18 U.S.C. § 3142(c)(1)(B)(iv)-(viii)[1].  The government has a

6   legitimate and compelling interest in preventing crimes by arrestees by imposing conditions of

7   pretrial release.  *United States v. Salerno*, 481 U.S. 739, 749 (1987); *Gardner*, 523 F. Supp. 2d at

8   1029.  The amended subparagraphs function to ensure the safety of the community and to verify

9   that defendants are compliant with all of the specific conditions of release imposed by the court.

10          The Adam Walsh Act provisions leave unchanged the court's traditional role of

11  determining whether an arrestee is to be detained or released on conditions.  Rather, Congress

12  mandates that if pretrial release is granted, certain minimum conditions shall be imposed for

13  specific enumerated offenses involving the exploitation of children.  The obvious purpose of the

14  release conditions in the Adam Walsh Act is to mandate a greater margin of safety for the

15  community in the face of dangerous individuals who have already sought to engage in certain

16  sexual activities involving minors.

17          The statutory language is plain and unambiguous.  Electronic monitoring is required "[i]n

18  any case that involves a minor victim under section . . . 2252(a)(1)."  18 U.S.C. § 3142(c)(1)(B).

19  When the language of a given statute is plain, "the sole function of the courts is to enforce it

20  according to its terms." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989)

21  (citation and internal quotations omitted).  To this end, "courts must presume that a legislature

22  says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v.*

23  *Germain*, 503 U.S. 249, 253-54 (1992).  Defendant is charged with one count of violating

24  section 2252(a)(1), transmission of child pornography.  Because Congress expressly enumerated

25  the charged offense of section 2252(a)(1), and because section 2252(a)(1) is an offense that

26

27          [1] The United States acknowledges that Congress did not enumerate possession of child

28  pornography under section 2252(a)(4) as an offense requiring electronic monitoring.

*United States' Response to Def's Mot.*
*to Modify Pretrial Release*
CR 08-00075 JW                                4

1  "involves a minor victim," electronic monitoring is required in this instance.

2  Defendant argues that Congress actually intended an additional element to the imposition

3  of electronic monitoring under section 3142(c). Defendant interprets the language "[i]n any case

4  that involves a minor victim" to require not just a minor victim under the charged conduct in

5  section 2252(a)(1), but that the defendant must also have transmitted the child pornography to a

6  child "or in some other manner victimized" a child for electronic monitoring to apply under

7  section 3142(c)(1)(B). (Mot. at 3). This construction is inconsistent with the statute and the

8  Congressional purpose to expand the community safeguards for persons on pretrial release whoh

9  have been charged with sexually exploiting minors.

10  The distribution and possession of child pornography is far from a victimless crime. *See,*

11  *e.g., United States v. Goff*, 501 F.3d 250, 259 (3d Cir. 2007) ("Children are exploited, molested,

12  and raped for the prurient pleasure of Goff and others who support suppliers of child

13  pornography;" their "injuries and the taking of their innocence are all too real"); *United States v.*

14  *Goldberg*, 491 F.3d 668, 672 (7th Cir. 2007) ("Young children were raped in order to enable the

15  production of the pornography"). The elements of section 2252(a)(1) prohibit the transmission

16  of a visual depiction of "a minor engaging in sexually explicit conduct," and thus, by definition

17  is an offense that "involves a minor victim." Section 2252(a)(1) does not include an additional

18  element that the child pornography actually be distributed to a minor, and there is no legal basis

19  to include an additional element under 3142(c) that a child be a recipient of defendant's

20  transmissions.

21  Defendant's reliance on *United States v. Kahn* is inapposite. 524 F. Supp. 2d 1278 (W.D.

22  Wash. 2007). In *Kahn*, the magistrate judge considered whether the Adam Walsh Act's

23  electronic monitoring requirements applied to an instance where the defendant was charged with

24  an enumerated provision under section 3142(c), interstate travel with the intent to engage in

25  illicit sexual conduct with another person, but the child victim was in fact an adult posing as a

26  minor. *Id.* at 1281. The court concluded that because the underlying charged offense, 18 U.S.C.

27  § 2423(b), did not include as an element a minor victim, that the electronic monitoring

28

*United States' Response to Def's Mot.*
*to Modify Pretrial Release*
CR 08-00075 JW                                  5

1  provisions under section 3142 did not apply.  *Id.* at 1283.

2  Here, by contrast, a minor victim is an express element of the charged offense conduct

3  under section 2252(a)(1).  Further, *Kahn*'s statutory construction of section 3142 has been cited

4  by exactly no other court since its publication.  The United States respectfully disagrees with the

5  court's analysis as inconsistent with Congressional intent to expand the protection of children

6  from persons on pretrial release.  The court's analysis is also irreconcilable with the statutory

7  scheme under section 2423(f) defining "illicit sexual conduct" as a sexual act with a minor, a

8  factor the *Kahn* opinion fails to even address.  Further, *Kahn* is at odds with established

9  precedent involving actual and intended minor victims.  *See*, *e.g.*, *United States v. Meek*, 366

10  F.3d 705, 717-20 (9th Cir. 2004) (conviction for use of internet to induce a minor to engage in

11  sexual activity under 18 U.S.C. § 2242(b) does not require an actual minor victim).  Congress

12  enacted the Adam Walsh Act to expand the community's protection against individuals charged

13  with transmission of child pornography, and the electronic monitoring provision clearly applies

14  to the defendant.

15          **B.**        **Application of the Adam Walsh Amendments Does Not Violate the Constitution's Prohibition Against *Ex Post Facto* Legislation.**

16

17  To run afoul of the Constitution's *ex post facto* prohibitions under Article I, section 9, a

18  law must: (1) punish as a crime an act already committed that was not a crime when it occurred;

19  (2) increase the punishment for a crime after it was committed; or (3) deprive a person charged

20  with a crime of a defense available under the law at the time the act was committed.  *Collins v.*

21  *Youngblood*, 497 U.S. 37, 42-43 (1990); *Dobbert v. Florida*, 432 U.S. 282, 292 (1977).

22  The Adam Walsh Act's electronic monitoring amendment to the Bail Reform Act

23  criminalizes nothing, punishes nothing, and does not address itself to available defenses.  As

24  defendant acknowledged during the June 9, 2008 hearing before this Court, no *ex post facto*

25  problem exists.  Nevertheless, defendant, relying upon *Landgraf v. USI Film Products*, 511 U.S.

26  244 (1994), claims that the electronic monitoring requirements run afoul of a judicial

27  presumption against retroactive legislation.  (Mot. at 6).

28

*United States' Response to Def's Mot.*
*to Modify Pretrial Release*
CR 08-00075 JW                       6

1    The defendant's primary case in support of her retroactivity argument, however,

2    recognizes that legislation like the Adam Walsh Act is permissible.  The Supreme Court in

3    *Landgraf*, citing numerous of the Court's prior decisions, noted that intervening procedural

4    changes (those that change the procedures by which a criminal case is adjudicated as opposed to

5    changes in the substantive law of crimes), even those changes that work to a defendant's

6    disadvantage, may be applied in suits arising before their enactment without raising concerns

7    about retroactivity, so long as it does not do one of the above-listed prohibitions.  511 U.S. at

8    275; *Dobbert*, 432 U.S. at 293 (statute altering the methods employed in determining whether the

9    death penalty was to be imposed was permissible procedural change because there was no

10   change in the quantum of punishment attached to the crime); *Collins*, 497 U.S. at 44-46 (statute

11   allowing for reformation of an improper jury verdict passed after the respondent's crime was

12   permissible procedural change, and did not alter the definition of the crime or increase the

13   punishment); *Beazell v. Ohio*, 269 U.S. 167, 169-70 (1925) (statute requiring joint trials in non-

14   capital cases a permissible procedural change).

15   The Ninth Circuit has already concluded that changes to the Bail Reform Act are

16   procedural in nature and therefore not subject to *ex post facto* challenges.  *United States v.*

17   *McCahill*, 765 F.2d 849, 850 (9th Cir. 1985).  In *McCahill*, the Ninth Circuit addressed the

18   constitutionality of the then newly-enacted Bail Reform Act of 1984.  McCahill challenged the

19   reforms to the standards governing bail pending appeal of a conviction, making it more difficult

20   for a defendant to obtain bail pending appeal.  *Id.*  The Ninth Circuit concluded that the changes

21   enacted through Bail Reform Act were permissible procedural changes, not substantive, even

22   though a defendant may be detained post-conviction who ultimately would be successful on

23   appeal.  *Id.*  The Court held that "[t]he law does not alter or affect the length, severity, weight, or

24   other significant condition of the punishment. The law is procedural because it does not alter the

25   quantum of punishment."  *Id.*  Here, the change addresses a condition of pretrial release, not the

26   more restrictive issue of detention.  If the Ninth Circuit in *McCahill* viewed the change to the

27   standards of appeal for detention under the Bail Reform Act as procedural, the reform to the less-

28

*United States' Response to Def's Mot.*
*to Modify Pretrial Release*
CR 08-00075 JW                                    7

1  restrictive condition of pretrial release must also be viewed as procedural.

2      The view that changes to the Bail Reform Act are procedural rather than substantive is

3  also shared by the Circuits.  *See United States v. Miller*, 753 F.2d 19 (3rd Cir. 1985); *United*

4  *States v. Crabtree*, 754 F.2d 1200 (5th Cir. 1985); *United States v. Molt*, 758 F.2d 1198 (7th Cir.

5  1985); *United States v. Powell*, 761 F.2d 1227 (8th Cir. 1985); *United States v. Affleck*, 765 F.2d

6  944 (10th Cir. 1985); *United States v. Ballone*, 762 F.2d 1381, 1383 (11th Cir. 1985).  Because

7  the electronic monitoring amendment to the Bail Reform Act does not alter or affect the length,

8  severity, weight, or other significant condition of the punishment, or otherwise alter the quantum

9  of punishment, defendant's *ex post facto* claim must be denied.

10      **C.     Defendant's Facial Challenge to the Constitutionality of the Electronic
         Monitoring Requirements Fails.**

11

12      Defendant claims that the singular imposition of electronic monitoring by the Adam

13  Walsh Act violates the Constitution.  To succeed in mounting a facial constitutional challenge,

14  defendant must show that "no set of circumstances exists" under which the Adam Walsh Act's

15  amendment "would be valid." *Salerno*, 481 U.S. at 745.  This defendant has not done, and his

16  motion should be denied.

17      In *Salerno*, the Supreme Court addressed the constitutionality of the Bail Reform Act.

18  The Bail Reform Act was challenged on two grounds – that pretrial detention violated the Due

19  Process Clause of the Fifth Amendment, and that such detention violated the Excessive Bail

20  Clause of the Eighth Amendment.

21      The Supreme Court rejected both challenges.  "Given the well-established authority of

22  the government, in special circumstances, to restrain individuals' liberty prior to or even without

23  criminal trial and conviction," the Supreme Court pronounced that the government's "legitimate

24  and compelling" interest in preventing crime by arrestees outweighed an individual's liberty

25  interest. *Salerno*, 481 U.S. at 749-750. In addition, the Court reasoned that the pretrial detention

26  provisions were sufficiently tailored to satisfy Due Process concerns. *Salerno*, 481 U.S. at 750.

27      The Supreme Court also rejected the Eighth Amendment challenge raised by the Salerno

28

*United States' Response to Def's Mot.*
*to Modify Pretrial Release*
CR 08-00075 JW                                8

1  defendants. Ruling that "the right to bail . . . in the Eighth Amendment is not absolute," the

2  Court stated that the "only arguable substantive limitation of the Bail Clause is that the

3  Government's proposed conditions of release or detention not be 'excessive' in light of the

4  perceived evil." *Id.* at 752-754.  Distinguishing *Stack v. Boyle*, 342 U.S. 1 (1951), the Court

5  ruled that pretrial detention of certain defendants designated under the Bail Reform Act was not

6  excessive under the Eighth Amendment since the government's goal of protecting citizens was

7  more compelling than the goal of preventing flight.  *Id.* at 754-755.  The Supreme Court has

8  recognized the breadth of legitimate interests Congress could protect in restricting pretrial

9  release.  If Congress can impose detention to protect the community, surely they can require less

10  restrictive pretrial release conditions.

11              **1.    The Adam Walsh Act's amendment does not violate the Eighth
                      Amendment's prohibition against excessive bail.**

12

13       The Eighth Amendment to the United States Constitution provides that "[e]xcessive bail

14  shall not be required."  U.S. Const. amend. VIII.  In the context of conditions of pretrial release,

15  the Supreme Court has suggested that "the Government's proposed conditions of release or

16  detention [should] not be 'excessive' in light of the perceived evil."  *Salerno*, 481 U.S. at 754

17  (setting forth the general standard and upholding the rebuttable presumption of detention for

18  certain offenses).  Importantly, the Supreme Court has acknowledged that the government's

19  interest in pretrial restrictions may include its interest in limiting danger to the community, as

20  well as its interest in assuring the defendant's appearance.  *Id.*  ("Nothing in the text of the Bail

21  Clause limits permissible Government considerations solely to questions of flight. . . .  [T]o

22  determine whether the Government's response is excessive, we must compare that response

23  against the interest the Government seeks to protect by means of that response."); *see also*

24  *United States v. Montalvo-Murillo*, 495 U.S. 711, 714 (1990) (observing that among the

25  permissible considerations at a bail hearing is the question of whether the defendant poses a risk

26  of flight or a threat to the community).  Indeed, in certain cases, "Congress has mandated

27  detention on the basis of a compelling interest other than prevention of flight."  *Salerno*, 481

28

*United States' Response to Def's Mot.*
*to Modify Pretrial Release*
CR 08-00075 JW                                    9

1 U.S. at 754.

2      In *Gardner*, the court rejected defendant's excessive bail argument to electronic

3 monitoring because the government had a valid interest in protecting minors, and the

4 inconvenience of wearing a bracelet or anklet was not excessive.  523 F. Supp. 2d at 1030-31.

5 Electronic monitoring changed the manner in which the defendant's pretrial supervision was

6 enforced, providing real time, rather than periodic, monitoring of the defendant's whereabouts.

7 *Id.* at 1030.  The defendant still enjoyed substantial freedom of movement, and was not subject

8 to a bail amount so high that it ultimately resulted in detention.  *Id.*

9      In this case, electronic monitoring is not an "excessive" condition in light of the

10 government's valid interest in protecting minor victims while the specified defendant awaits

11 trial. *Gardner*, 523 F. Supp. 2d at 1029.  The mandatory condition of electronic monitoring

12 applies only in cases involving minor victims in which the defendants are charged with certain

13 enumerated offenses of child exploitation. 18 U.S.C. § 3142(c)(1)(B).  The monitoring itself

14 imposes only the inconvenience of wearing a bracelet or anklet.

15      Like the defendant in *Gardner*, here the defendant is also limited by certain time and

16 place conditions enforced by Pretrial Services. *Id.* at 1030.  Defendant does not challenge these

17 conditions, or any of the other standard pretrial release conditions imposed, but nevertheless

18 claims that the imposition of electronic monitoring amounts to "virtually complete home

19 confinement."  (Mot. at 13).  Such hyperbole neither comports with the facts nor the law.  The

20 defendant is not subject to more substantive restrictions to movement, such as detention, total

21 home confinement, or placement in a halfway house, and is not subject to a bail amount

22 financially out of reach that ultimately results in detention.  Rather, he has the freedom of

23 movement to travel to work, counseling, medical and legal appointments, as well as attend

24 softball games on Thursday evenings, errands on Saturday afternoon, dinner and movies or

25 theater on Saturday evening, more softball on Sunday mornings and afternoon, and dinner on

26 Sunday evenings. *See* May 11, 2008 Order for Modification of Pretrial Release Conditions.  The

27 imposition of electronic monitoring is simply an incremental safeguard to ensure that the

28

*United States' Response to Def's Mot.*
*to Modify Pretrial Release*
CR 08-00075 JW                10

1  defendant is where he is supposed to be at the time he is supposed to be there. *Gardner*, 523 F.

2  Supp. 2d at 1030.

3       The addition of electronic monitoring cannot be characterized as "excessive" in light of

4  the government's valid interest in obtaining additional safeguards against the risk of post-arrest

5  criminal activity.  Indeed, the Supreme Court has upheld Congress's similar dictate that, for

6  defendants charged with certain other crimes, a more stringent rebuttable presumption of

7  detention is appropriate to protect the community.  *Salerno*, 481 U.S. at 754 (upholding the

8  rebuttable presumption of detention set forth in 18 U.S.C. § 3142(e)).

9       Magistrate Judge Chen rightly found unpersuasive the unpublished decision cited and

10  relied upon the defendant here, *United States v. Crowell*, Slip Copy, No. 06-M-1095, 2006 WL

11  3541736 (W.D.N.Y. Dec. 7, 2006).  Neither the Eighth Amendment nor the case law require

12  conditions of pretrial release to be imposed in the least restrictive manner, rather only that

13  condition be reasonably calculated to a legitimate government interest, and not be excessive in

14  light of that interest.  *Gardner*, 523 F. Supp. 2d at 1031 (citing *Salerno*, 481 U.S. at 754; and

15  *Stack*, 342 U.S. at 4-5).  Defendant's right to be protected from excessive bail under the Eighth

16  Amendment is not violated by the application of electronic monitoring to his pretrial release.

17              **2.    The Adam Walsh Act's amendment to the bail statute does not
                        unconstitutionally deprive defendants of their procedural due process**
18                      **rights.**

19       Defendant argues that the electronic monitoring condition of release violates the Fifth

20  Amendment's guarantee of procedural due process.  To sustain the reform of section 3142(c)

21  against such a facial challenge, this Court need only find that the procedures set forth therein are

22  sufficient for "'at least some [persons] charged with [the listed] crimes,' whether or not they

23  might be insufficient in some particular circumstances."  *Salerno*, 481 U.S. at 751 (quoting

24  *Schall v. Martin*, 467 U.S. 253, 264 (1984)).  Put differently, for defendant's due process claim

25  to succeed, he must be able to show that for no defendant, under any set of circumstances, can

26  mandatory electronic monitoring be proper.  This defendant cannot do.

27       Under procedural due process analysis, assuming *arguendo* that electronic monitoring

28

*United States' Response to Def's Mot.*
*to Modify Pretrial Release*
CR 08-00075 JW                              11

1    implicates a constitutionally-protected interest[2], such imposition may occur only in accordance

2    with procedural safeguards.  These procedural safeguards in turn must be evaluated in light of

3    the significance of the interest affected, the risk of erroneous determination through the

4    procedures used, the probable value of additional safeguards, and the government's interest.

5    *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  Contrary to defendant's contention, the bail

6    statute, as amended by the Adam Walsh Act, affords defendants sufficient process to protect the

7    liberty interests at stake.

8         To begin with, the Adam Walsh Act amendment left entirely intact the central element of

9    procedural due process in the bail and detention context: an adversarial hearing.  Defendants

10   charged with child exploitation offenses still have their day in court, at which time they may

11   present, through counsel, any and all evidence in favor of release.  They may cross examine

12   witnesses the Government calls and they may call their own witnesses to testify on their behalf.

13   A neutral and detached magistrate determines the result.  None of this essential – and sufficient –

14   process is changed.  What is changed is that, should the court decide that the defendant merits

15   release, that electronic monitoring be a condition of that release.

16         Moreover, here defendant facially challenges the application of a condition of release, not

17   detention itself.  The liberty interest is significantly diminished from that of the defendants in

18   *Salerno*, who were challenging a procedure that resulted in their detention.  On the other side of

19   the scale, "the government's interest in preventing crime by arrestees is both legitimate and

20   compelling." *Salerno*, 481 U.S. at 749.  Certainly, then, procedures that were deemed

21   constitutionally sufficient in a detention setting, given the compelling governmental interest in

22   community safety, should be no less sufficient when that same community safety concern is

23   weighed against a mere condition of release.

24         Magistrate Judge Chen properly concluded that the incremental restriction of electronic

25

26

27         [2] Defendant's Motion complains against a broad constitutional injury involving the "mandatory release conditions – taken together."  Counsel for defense has subsequently clarified that the procedural due process claim is addressed only to the electronic monitoring condition.

28

*United States' Response to Def's Mot.*
*to Modify Pretrial Release*
CR 08-00075 JW                    12

1   monitoring implicated no protected liberty interest within the meaning of the Due Process

2   Clause. *Gardner*, 523 F. Supp.2d at 1032-1033. No legislatively created interest is implicated

3   by Congress removing the prior legislative limits on the government's ability to impose the

4   condition of electronic monitoring. Congress can take away what it previously conferred

5   without violating procedural due process. *Id.* at 1033.

6        Similarly, electronic monitoring implicates no reasonable expectation of privacy under

7   the Fourth Amendment because the system monitors only what would be readily available to the

8   public eye, and a person has no expectation of privacy where a person travels in public. *Id.*

9   (citing *United States v. Knotts*, 460 U.S. 276, 281-282 (1983)). Electronic monitoring does not

10  reveal where the defendant is within his home, what he is doing, or the company with which he

11  keeps. Likewise, electronic monitoring implicates no common law right to privacy because it

12  only provides information that otherwise would be publicly available. *Gardner*, 523 F. Supp. 2d

13  at 1034. Electronic monitoring does not violate procedural due process because it does not

14  intrude upon any recognized liberty interest.

15              **3.    The condition of electronic monitoring in the Adam Walsh Act does
                        not violate separation of powers.**

16

17       Defendant's final constitutional challenge is that Congress, through the enactment of the

18  Adam Walsh Act's amendment to 18 U.S.C. § 3142, improperly invaded the province of the

19  judiciary. To be clear, Congressional intrusions are not to be taken lightly. "[W]ithin our

20  political scheme, the separation of governmental powers into three coordinate branches is

21  essential to the preservation of liberty." *Mistretta v. United States*, 488 U.S. 361, 380 (1989)

22  (finding that the entire Sentencing Guidelines scheme was not a violation of separation of

23  powers). As such, the Supreme Court has been ever-vigilant for any enactment that

24  "impermissibily threatens the institutional integrity of the Judicial Branch." *Commodities*

25  *Futures Trading Commission v. Schor*, 478 U.S. 833, 851 (1986).

26       The bail process involves both the judicial and legislative branches. As the court

27  recognized in *Gardner*, "Congress has long had a substantial hand in shaping the bail process.

28

*United States' Response to Def's Mot.*
*to Modify Pretrial Release*
CR 08-00075 JW                                    13

1   Legislation on bail finds its root in the Judiciary Act of 1789.  This landmark act explicitly

2   required bail of all defendants, but authorized denial of bail where the defendant's offense was

3   punishable by death."  523 F. Supp. 2d at 1036.  Additionally, the Supreme Court recognized,

4   consistent with the Eighth Amendment, the class of cases upon which Congress could prohibit

5   bail, thus denying the judiciary its right to exercise its authority.  In *Salerno*, defendants argued

6   that, under *Stack v Boyle,* 342 U.S. 1 (1951), the only permissible basis for detaining them could

7   be flight risk.  Defendants disputed that they were a flight risk.  The Supreme Court disagreed

8   and quoted approvingly from *Carlson v. Landon*, 342 U.S. 524 (1952), regarding the power of

9   Congress with respect to setting rules for bail:

10          The bail clause was lifted with slight changes from the English Bill of Rights Act.
            In England that clause has never been thought to accord a right to bail in all cases,
11          but merely to provide that bail shall not be excessive in those cases where it is
            proper to grant bail. When this clause was carried over into our Bill of Rights,
12          nothing was said that indicated any different concept. *The Eighth Amendment has
            not prevented Congress from defining the classes of cases in which bail shall be
13          allowed in this country. Thus, in criminal cases bail is not compulsory where the
            punishment may be death.  Indeed, the very language of the Amendment fails to
14          say all arrests must be bailable.*

15  *Salerno*, 481 U.S. at 754 (quoting *Carlson*, 342 U.S. at 545-46) (emphasis added).  If Congress

16  can "defin[e] the classes of cases in which bail shall be allowed" and even eliminate bail for

17  some cases (such as death penalty cases), then surely it cannot be a constitutional rule –

18  separation of powers or otherwise – that bail must be left wholly to the discretion of judges.

19  *Stack* held no such thing, and *Salerno* positively refutes such a proposition.

20          Further, the error of defendant's separation of powers argument is easily demonstrated by

21  applying it to other judicial functions where Congress sets forth mandatory rules.  For example,

22  no one would dispute that sentencing is a "judicial function," yet Congress has set forth

23  numerous mandatory rules applicable to sentencing, including mandatory minimum sentences

24  for certain crimes.  If it actually violated separation of powers for Congress to impose a specific

25  rule to be applied to all defendants without regard to the individual circumstances of the arrestee

26  as defendant asserts, then mandatory minimum sentences would also be unconstitutional.  They

27  plainly are not.  *See*, *e.g.*, *Harris v. United States*, 536 U.S. 545 (2002) (upholding

28  *United States' Response to Def's Mot.
    to Modify Pretrial Release*
    CR 08-00075 JW                          14

1  constitutionality of mandatory minimum sentence under 18 U.S.C. § 924(c)); *Ewing v.*

2  *California*, 538 U.S. 11 (2003) (upholding constitutionality of California's "three strikes"

3  sentencing law).

4       Magistrate Judge Chen properly rejected the defendant's reliance upon *Crowell* in

5  support of the proposition that the Congress somehow deprived the courts of its fundamental role

6  of determining whether an arrestee is to be detained or released upon conditions. *Gardner*, 523

7  F. Supp. 2d at 1036. *Crowell* is incorrect, and, as Judge Chen recognized, the opinion itself cites

8  no "authority directly addressing whether legislation such as the Adam Walsh Act, regulating a

9  field already immersed in legislative prescription and which does not substantially alter the

10 fundamental function of the court, constitutes a violation of the separation of powers." *Id.*

11 Indeed, *Crowell*'s reasoning would invalidate mandatory minimum sentences, guidelines, or any

12 other mandatory rule with respect to cases. Applying settled separation of powers principles,

13 there is nothing remotely offensive to separation of powers in Congress establishing mandatory

14 rules for conditions of release applicable to child abuse-related defendants.

15 **IV.    CONCLUSION**

16      The Adam Walsh Act was designed to protect children from victimization. By enacting

17 the Adam Walsh Act, Congress acknowledged our shared duty to protect children from

18 exploitation and danger, and sent a clear message that those who prey on children will be caught,

19 prosecuted and punished to the fullest extent of the law. The monitoring aspects of the Adam

20 Walsh Act, required for those charges with certain offenses involving child exploitation, permit

21 law enforcement to ensure that further children are not victimized via the internet or by hands-on

22 predators.

23      Defendant cannot satisfy the heavy burden required to successfully mount a

24 constitutional challenge to the Adam Walsh Act amendments to the Bail Reform Act.

25 //

26 //

27 //

28

*United States' Response to Def's Mot.*
*to Modify Pretrial Release*
CR 08-00075 JW                                    15

1  Accordingly, defendant's request for a finding of unconstitutionality must be denied and the

2  court should continue the conditions of release set forth in the Adam Walsh Act and already

3  adopted in this case.

4

5  DATED:        June 13, 2008                    Respectfully submitted,

6                                                JOSEPH P. RUSSONIELLO
                                                 United States Attorney

7

8                                                _____/s/_____
                                                 DANIEL R. KALEBA

9                                                Assistant U.S. Attorney

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*United States' Response to Def's Mot.*
*to Modify Pretrial Release*
CR 08-00075 JW                          16